UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lee Elliott,                                                    Civ. No. 21-2001 (PAM/DTS)

              Plaintiff,

v.                                                      **MEMORANDUM AND ORDER**

JBM Patrol and Protection,

              Defendant.

---

This matter is before the Court on Defendant JBM Patrol and Protection's Motion

to Dismiss.  (Docket No. 13.)  For the following reasons, the Motion is granted in part

and denied in part.

**BACKGROUND**

In 2014, Plaintiff Lee Elliott ("Elliott") began working as a security guard for

Defendant JBM Patrol and Protection ("JBM"), a private security company.  (Am.

Compl. (Docket No. 11) ¶ 7.)  Elliott "quickly transitioned to scheduler and operations

manager."  (Id.)

Five years later, in the spring of 2019, JBM's then-President, Randy Olson, asked

Elliott to assume the additional duties of payroll and human-resources from an employee

who had quit.  (Id. ¶ 8.)  Olson instructed Elliott not to record working more than 40

hours a week, but "directed [him] that he must work until all the work is done."  (Id. ¶ 9.)

"[Elliott] grew frustrated with having to work overtime without getting paid for it.  When

he attempted to express his frustrations," Olson "dismissed and berated" him.  (Id.)

Later in the spring of 2019, JBM asked Elliott to sign an updated version of the company's handbook, "which stated that working off the clock was a terminable offense." (Id. ¶ 10.)  Elliott contacted JBM's corporate office to discuss this and spoke with JBM's Chief Financial Officer, David Paul. (Id. ¶¶ 10-11.)  Elliott explained to Paul that Olson "directed [him] to work extra hours because they did not have enough office staff" and that "Olson would not let [him] exceed forty hours." (Id. ¶ 11.)  Paul instructed that Elliott should record all hours and get paid for all his work, but "made no attempt" to compensate Elliott for the unpaid overtime. (Id.)  After his conversation with Paul, "[Elliott] recorded all his hours with the expectation he would be paid for each hour worked." (Id. ¶ 12.)

Elliott continued working more than forty hours a week; eventually, "his physical and mental health started to deteriorate from the demand." (Id. ¶ 13.)  At some point between the spring of 2019 and the spring of 2020, Elliott spoke with Will Riley, the President of JBM's parent company, and Jesse Makela, JBM's Minnesota branch manager, about his concern that being short-staffed required him to work overtime. (Id. ¶ 15.)  Riley responded that Elliott and Makela should "figure it out." (Id.)  Makela "encouraged" Elliott to address "after hours issues" as they arose. (Id. ¶ 16.)  When Elliott expressed concern about the amount of work, Makela replied that despite being short-staffed, corporate would not authorize more hiring. (Id.)

Sometime later, Makela expressed to Elliott that JBM's corporate office was concerned with the number of overtime hours he was working and that he needed to cease doing so, yet Makela agreed with Elliott that he could not accomplish all his work within

40 hours and acknowledged that Elliott was still covering after-hours work.  (Id. ¶ 19.)

Subsequently, Elliott sent an email to Makela to inform that he would no longer work overtime.  (Id. ¶ 18.)  Elliott maintains that "[w]ithin the context of the conversation with Mr. Makela, the meaning of [Elliott]'s statement that he would not be working overtime is that he would not be doing uncompensated work."  (Id. ¶ 20.)  JBM fired Elliott the next day, April 16, 2020.  (Id. ¶ 18.)

"[S]hortly before" he was terminated, Elliott received a raise.  (Id. ¶ 17.)  And two days before he was terminated, Makela informed Elliott that corporate had "praised . . . [him] for doing a good job."  (Id.)

Following his termination, Elliott recorded a phone conversation with Makela. (Id. ¶ 21.)  On that call, Makela agreed that JBM assigned Elliott an amount of work that required him to work overtime, while admitting that JBM fired him for working overtime. (Id.)  Elliott also sent an email asking to be paid for the overtime hours that he had worked, and JBM paid him for 92 hours, which Elliott claims was less than the number of overtime hours that he had "banked."  (Id. ¶ 22.)

In August 2021, Elliott filed a lawsuit against JBM in Hennepin County; thereafter, JBM removed the lawsuit to this Court, and moved to dismiss the case.  (See Docket Nos. 1, 6.)  Elliott filed an Amended Complaint, alleging that JBM violated the Minnesota Whistleblower Act ("MWA"), the Minnesota Fair Labor Standards Act ("MFLSA"), and the federal Fair Labor Standards Act ("FLSA").  (Docket No. 11.)  JBM moves to dismiss the Amended Complaint.

**DISCUSSION**

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6). A claim bears facial plausibility when it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept plausible factual allegations as true. Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to support a claim. Iqbal, 556 U.S. at 678. At this stage, the Court assumes the allegations in the Amended Complaint are true and views them in the light most favorable to Elliott. See Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 933 n.4 (8th Cir. 2012).

**A.      Wrongful Discharge and Retaliation**

JBM moves to dismiss Elliott's claims under the MFLSA and FLSA, which allege that JBM terminated him because he asserted his right not to work uncompensated overtime. (Am. Compl. ¶¶ 28, 34, 39.) The MFLSA and FLSA generally require employees to be paid overtime for working more than forty-eight hours or forty hours a week, respectively. Minn. Stat. § 177.25, subd.1; 29 U.S.C. § 207(a)(2)(c). Absent direct evidence of retaliation, the McDonnell Douglas framework applies to Elliott's wrongful-discharge and retaliation claims. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 794,

(1973); <u>Wood v. SatCom Mktg., LLC</u>, 705 F.3d 823, 828  (8th Cir. 2013).  Thus, to state a claim that he was fired for asserting his right to be paid for working overtime under either the FLSA or the MFLSA, Elliott must sufficiently allege that:  (1) he engaged in statutorily protected activity; (2) JBM took an adverse employment action against him; and (3) there is a causal connection between the two events.  <u>Id.</u> at 829.  Elliott claims that JBM twice violated his rights, initially in the spring of 2019 and subsequently in the April of 2020.  Because the same underlying conduct is at issue regarding Elliott's MFLSA and FLSA claims, the Court will analyze these claims together.

### 1.      Spring 2019

There is no dispute that Elliott's termination constitutes an adverse employment action.  Elliott alleges that Olson instructed him to work unpaid overtime, yet he further explains that soon thereafter other JBM leadership instructed Elliott to record all of the hours that he worked.   Although not stated in the Amended Complaint, Olson's employment with JBM ended on December 16, 2019.  (Myrie Decl. (Docket No. 9) ¶ 3.) Thus, Olson had no influence over Elliott's April 2020 termination.  It is implausible that JBM's leadership, who agreed with Elliott that he must be paid for working overtime, would fire him a year later because he followed their instruction to record all of his hours. Notably, the Amended Complaint is silent as to how the 2019 events ostensibly led to his termination the following year.  Viewing the facts in the light most favorable to Elliott, it nevertheless belies logic that Elliott's spring 2019 report to Olson caused his April 2020 termination.

Therefore, to the extent that Elliott's MFLSA wrongful-discharge and FLSA-retaliation claims rely on his interactions with Olson in April 2019, they are dismissed.

### 2.      April 2020

Elliott alleges that on April 15, 2020, he wrote an email to Makela informing him that he would no longer work overtime, which "[w]ithin the context of the conversation . . . [meant] that he would not be doing uncompensated work," and that he was fired as a result.  (Am. Compl. ¶ 20.)  Elliott also contends that after his termination, Makela informed him that he was fired for overtime issues.  (Id. ¶ 21.)  Although Elliott fails to plead additional facts to support his allegation of the conversation's context, the Court construes the allegations in the Amended Complaint in the light most favorable to Elliott.  Through that lens, he plausibly pleads a connection between his email and his termination, and JBM's Motion is denied as to Elliott's MFLSA wrongful-discharge and FLSA retaliation claims related to the April 2020 conduct.

### B.      Willful Failure to Pay Overtime

Ordinarily, a violation of the FLSA is subject to a two-year statute of limitations.  See 29 U.S.C. § 255(a).  Claims accrue on the date that the paycheck for the allegedly unpaid wages would have been due.  29 C.F.R. § 790.21(b).  The plaintiff bears the burden to extend the statute of limitations from two to three years by showing that the employer's violation was willful, i.e., the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute."  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).

The sole instance of Elliott working uncompensated overtime is alleged to have occurred in the spring of 2019. He filed this lawsuit on August 2, 2021. Thus, to prevent his claim from being time-barred, Elliott asserts that Olson's conduct in the spring of 2019 demonstrated willfulness. JBM contends that the facts in the Amended Complaint defeat any claim of willfulness, because Elliott alleges that JBM leadership soon thereafter directed him to record all of his working hours. JBM overlooks that Olson's instruction carried authority because he was JBM's president. Further, Elliott's concession that he followed Olson's direction for a "relatively short-lived" period does not diminish his claim that JBM willfully violated the FLSA. (Pl.'s Opp'n Mem. (Docket No. 19) at 12.) For the purposes of this Motion, Elliott has sufficiently alleged willfulness based on Olson's comments in the spring of 2019.

Additionally, Elliott alleges that after he was terminated, he asked to be paid for all his "banked" overtime and claims that although JBM paid him for 92 overtime hours, JBM has yet to satisfy his request in full. (Am. Compl. ¶ 22.) JBM's Motion is denied as to Elliott's FLSA unpaid-overtime claim.

## C.      Minnesota Whistleblower Act

Elliott alleges that JBM retaliated against him in violation of two provisions of the MWA, which protect employees who in good faith report violations of law. See Minn. Stat. § 181.932, subd. 1. The MWA prohibits retaliating against an employee who in good faith reports a violation of the law and protects an employee for retaliation if the employee refuses an order to violate the law. Id. § 181.932, subd. 1(1), (3).

As with the claims discussed above, the <u>McDonnell Douglas</u> standard applies to Elliott's MWA claim, because he has no direct evidence of a retaliatory motive. <u>Scarborough v. Federated Mut. Ins. Co.</u>, 996 F.3d 499, 505 (8th Cir. 2021).

### 1.      April 2019

First, Elliott pleads that in 2019 he reported a violation of overtime laws, and that JBM violated the subsection of the MWA that prohibits an employer from retaliating against an employee for doing so.  The Court finds that Elliott sufficiently pleads facts supporting that he reported a violation of overtime laws through raising the issue with JBM's corporate office, satisfying that he engaged in a protected activity.  There is no dispute that Elliott's termination constituted an adverse employment action, satisfying the second prong of the test.  Whether Elliott sufficiently alleges a causal connection between his report and his subsequent termination is in dispute.

As with his MFLSA and FLSA claims, Elliott neither alleges nor makes any attempt to describe how his report to JBM management in 2019 conduct caused his termination a year later.  Thus, his MWA claim fails to the extent that it relies on the 2019 conduct.

### 2.      April 2020

Elliott further alleges that JBM again violated the MWA when he told Makela that he would not work overtime and JBM fired him the next day.  The MWA broadly defines a "report," such that for the purposes of this Motion, his email to Makela in 2020 constitutes a report under the MWA.  <u>See id.</u> § 181.931, subd. 6 (defining "report" under the MWA). Because Elliott alleges that he reported that JBM planned to violate the law through not paying him to work overtime, and that he was fired for doing so, JBM's Motion is denied

as to Elliott's whistleblower claim under the MWA for reporting a violation as related to the April 2020 conduct.

Elliott further alleges JBM violated the MWA when it terminated him after he sent an email in which he stated that he would not work overtime.  Viewing the facts in the light most favorable to Elliott, he has sufficiently alleged that he refused JBM's order to work uncompensated overtime and that within the context of his conversation with Makela, JBM was on notice that Elliott refused to do so because he believed it to be a violation of law.

Thus, Elliott pleads fact sufficient facts to support that his termination was causally related to his alleged whistleblowing, and JBM's Motion is denied as to Elliott's MWA claim regarding the 2020 conduct.

**D.  Notice of Termination**

The MWA allows for an involuntarily terminated employee to send a written request to his former employer within 15 working days after he or she was terminated inquiring as to the reason for his or her termination, to which the employer must respond within 10 working days.  Id. § 181.933.  Any failure to notify is punishable with civil penalties if the employee was also injured by the employer's substantive violation of the MWA.  See id. § 181.935(b).

On April 24, 2020, Elliott wrote to JBM, asking for the truthful reason that he was fired.  (Id. ¶ 23.)  Elliott alleges, and JBM does not dispute, that JBM has not responded.  (Id.)  Thus, JBM's Motion is denied as to Elliott's notice-of-termination claim.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** Defendant JBM Patrol and Protection's Motion to Dismiss (Docket No. 13) is **GRANTED in part and DENIED in part** .

Date: Wednesday, April 6, 2022                    s/ *Paul A. Magnuson*
                                                                   Paul A. Magnuson
                                                                   United States District Court Judge